UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK R. SMITH,

                    Petitioner,                   Case Number 5:11-CV-11145
                                                Honorable John Corbett O'Meara

v.

MITCH PERRY,

                    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

      Petitioner was convicted after a jury trial in the Wayne Circuit Court of second-degree murder, felon in possession of a firearm, and commission of a felony with a firearm. As a result of his convictions, Petitioner is serving a controlling sentence of 30-to-50 years in a Michigan correctional facility. Petitioner brings this action under 28 U.S.C. § 2254, raising twelve claims. The Court finds that Petitioner's claims either lack merit or are barred from review by Petitioner's procedural defaults. The petition will therefore be denied. The Court will also deny Petitioner a certificate of appealability and deny him permission to appeal in forma pauperis.

I. Facts

      Petitioner was tried twice for these crimes. His first trial ended in a mistrial after a hung jury. He was convicted of the above crimes after his second trial. This Court recites verbatim the relevant facts developed at his second trial and relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

On May 6, 2002, Carl Davis entertained several friends, including the victim, defendant, and Darrell Collins. Some were allegedly using marijuana and alcohol. Collins testified that he and the victim left Davis' residence on foot between 2:00 and 3:00 a.m. Defendant subsequently caught up with Collins and the victim and joined them. Shortly thereafter, Collins went a short distance from the two men to use the bathroom. Collins explained that as he zipped up his pants he turned back and saw defendant shoot the victim in the back of the head. He saw the victim remove his hand from his coat pocket, and raise it in an attempt to block the shot. Collins ran from the scene but could hear defendant calling his name and telling him to come back. Collins eventually entered a secured industrial plant where he told a security guard about the incident. The security guard testified that Collins asked her to call the police and told her that "[t]hey or he killed [his] friend[.]" The victim died from a single close-range gunshot to the back of the head.

*People v. Smith*, 2006 Mich. App. LEXIS 2303, *1-2 (Mich. Ct. App. July 25, 2006).

Following sentencing, Petitioner filed an appeal of right. His appointed appellate attorney filed a brief on appeal that raised the following claims:

I. Petitioner was denied the effective assistance of counsel when his trial counsel did the following:

> a. Defense counsel failed to adequately cross-examine prosecution witnesses.
> b. Defense counsel failed to object to the prosecutor's improper bolstering of witness Darrell Collins' testimony.
> c. Defense counsel failed to fully explore Petitioner's right to testify on his own behalf.
> d. Defense counsel should not have called Witness Wayne Wallace to testify.

II. The trial court erred when it ruled that Witness Gregory Berry's prior homicide conviction was admissible.

III. Petitioner was denied his Sixth Amendment right to confrontation when the trial court restricted defense counsel's cross-examination.

IV. The trial court erred when it denied Petitioner's motion for a directed verdict on the charge of first degree murder.

V. The trial court erred when it allowed an original juror to be replaced by an alternate juror.

The Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *Id.*

2

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, which raised the same claims. The Michigan Supreme Court denied the application by standard order. *People v. Smith*, 477 Mich. 973 (2006) (table).

Petitioner then returned to the trial court and filed a motion for relief from judgment, that raised the following claims:

> I. Petitioner's right to due process and to a fair trial was violated when the prosecutor failed to disclose that Witness Darrell Collins had an expectation of leniency for his testimony and when the prosecutor misled the jury into believing that Darrell Collins sole motivation was to seek justice.
>
> II. The trial court erred, thereby denying Petitioner due process and a fair trial, when it failed to give a cautionary instruction on Witness Darrell Collins' expectation of leniency for his testimony.
>
> III. Petitioner was denied the effective assistance of counsel when his trial counsel did the following:
>
> > a. Defense counsel failed to call Witness Gregory Berry, which interfered with Petitioner's right to present a defense.
> > b. Defense counsel failed to demand disclosure of Witness Darrell Collins' deal with the prosecution and defense counsel failed to effectively impeach him.
> > c. Defense counsel improperly acted as counsel when there was a conflict of interest.
>
> IV. There was insufficient evidence presented to support Petitioner's conviction of felon in possession of a firearm.
>
> V. The trial court erred when it failed to ascertain on the record whether Petitioner intelligently and knowingly waived his right to testify in his own defense.
>
> VI. The cumulative effect of the errors violated Petitioner's constitutional rights.
>
> VII. Petitioner has demonstrated cause and prejudice for the failure to raise certain claims on direct appeal. Or, in the alternative, Petitioner has demonstrated that the cause and prejudice requirement should be waived because he is actually innocent of the crimes charged.

The trial court denied the motion by opinion and order dated March 9, 2009. The court

3

stated: "Defendant has not shown 'good cause' under Michigan Court Rule 6.508(D)(3) as to why the issues presented in the motion were not previously raised on appeal. Further, he has not proven actual prejudice." Opinion, at 4.

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. The application was denied "for failure to establish entitlement to relief under Rule 6.508(D)." *People v. Smith*, No. 296869 (Mich. Ct. App. July 2, 2010). Petitioner applied for leave to appeal this decision in the Michigan Supreme Court but was also denied relief under Rule 6.508(D). *People v. Smith*, No. 141653 (Mich. Sup. Ct. March 8, 2011).

Petitioner's habeas application presents the same twelve claims that he raised in the state courts on direct and collateral review.

## II. Standard of Review

Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law; or resulted in a decision that was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. A state court decision "based on a factual

4

determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citations omitted).

Recently, the United States Supreme Court held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*,    U.S.    ,    , 131 S.Ct. 770, 786, 178 L. Ed. 2d 624 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Indeed, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*,    U.S. at    , 131 S.Ct. at 786-87.

### IV. Discussion

A. Ineffective Assistance of Counsel

Petitioner's first habeas claim asserts that he was denied the effective assistance of trial counsel.  Specifically, he claims that his trial attorney: (1) failed to adequately cross-examine prosecution witness Collins; (2) failed to object to the prosecutor's improper bolstering of Collins'

testimony; (3) failed to advise Petitioner to testify in his own defense; and (4) called a witness, Wayne Wallace, in the defense case that benefitted the prosecution. Each of the these claims were raised in Petitioner's direct appeal, and the Michigan Court of Appeals considered and rejected the allegations on the merits.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id*. at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

6

adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Id*. at 788.

Petitioner's first allegation of ineffective assistance of counsel asserts that his counsel did not adequately cross-examine prosecution witness Collins.  He asserts that there was information that Collins may have made a written statement to the police, but his counsel did not explore that lead which resulted in the loss of potential impeachment material.

No such written statement was every produced during the state court proceedings, so it is unknown what it might contain or whether it even exists.  Petitioner states the proof of the existence of the written statement can be found in the evidence presented at his first trial.  He states that a police officer testified at his first trial that Collins wrote-out a statement for one of the responding officers and that it was preserved in a police report.

The Michigan Court of Appeals found that Petitioner could not demonstrate he was prejudiced because he did not establish the existence or contents of the statement.  In fact, at Petitioner's second trial, defense counsel vigorously cross-examined Collins. See T 11/4/04, pp. 60-

7

114. The chief thrust of the examination was to suggest that Collins received or was going to receive favorable sentencing consideration for unrelated charges he faced in federal court in West Virginia. Collins essentially denied that his own case provided motivation to testify against Petitioner, but defense counsel undermined this claim by reference to Collins' sentencing transcript.

Defense counsel also attacked Collins with statements he made to the police. Defense counsel referred to two statements. The first was made verbally to responding officers, and the second was made to a homicide detective at the police station. Collins essentially claimed that he recalled speaking to the responding officers and telling them that he saw the shooting, and he denied telling them that he heard the shooting but did not see it. Id., pp 83-86. One of the responding officers testified on the other hand that Collins told her that he heard the shots and ran. T 11/8/04, pp. 59, 71. The parties stipulated to having the other responding officer's police report read into the record. It stated that Collins said that he heard the shot but did not see anything. Id., p. 115. Accordingly, a significant inconsistency between what Collins told the responding officers and his trial testimony was effectively presented to the jury by defense counsel. At trial, Collins testified that he saw Petitioner shoot the victim, but he only told the officers that he heard a shot. Therefore, even if Petitioner was deprived of the opportunity to further highlight this difference by being able to refer to another written statement, he had not shown a reasonable probability that the result of the trial would have been more favorable.

Petitioner next asserts that his counsel failed to object to the prosecutor's improper bolstering of Collins. Improper bolstering occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor

has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also, United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001). The prosecutor did neither of these things, so Petitioner's counsel was not ineffective for failing to object. *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995).

During his questioning of one of the investigating officers, the prosecutor elicited testimony that the police had not uncovered any information that Collins was the shooter. The officer testified that if they would have received any such leads, they would have followed-up on them. This line of questioning was a response to Petitioner's defense that Collins was the perpetrator of the crime and that the police failed to adequately investigate that possibility. Simply stated, the complained-of line of questioning did not suggest to the jury that the prosecutor had hidden evidence of Petitioner's guilt, nor did it invoke the prestige of his office as an improper means to obtain a guilty verdict.

Petitioner's third allegation assets that his counsel should have more thoroughly explored his right to testify in his own defense. Essentially, Petitioner claims that the record does not adequately reflect a knowing and voluntary waiver of Petitioner's right to testify. However, when a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed. *Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000). A trial court has no duty to inquire sua sponte whether a defendant knowingly, voluntarily, or intelligently waives his right to testify. *United States v. Webber*, 208 F.3d 545, 551-52 (6th Cir. 2000). Waiver of the right to testify may be inferred from a defendant's conduct. Here, the trial court asked defense counsel whether Petitioner would testify. She responded that she did not know. Soon afterwards, defense counsel asked for a moment before proceeding, and then stated that the defense had nothing further to present. Because the record is void of any indication by Petitioner that he disagreed with counsel's

9

advice that he should not testify, and because the record contradicts his claim, Petitioner has not overcome the presumption that he willingly agreed to counsel's advice not to testify or that his counsel rendered ineffective assistance of counsel. *Gonzales*, 233 F.3d at 357.

Petitioner's final allegation of ineffective assistance of counsel challenges his trial attorney's decision to call Wayne Wallace as a witness for the defense. Decisions as to what evidence to present and whether to call certain witnesses are generally presumed to be a matter of trial strategy. *See Chegwidden v. Kapture*, 92 Fed. Appx. 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). However, even when making strategic decisions, counsel's conduct must be reasonable. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).

Here, Wayne Wallace testified that Collins talked to him about the shooting and gave several different accounts of how it occurred. On cross-examination, Wallace testified that Collins identified Petitioner as the shooter and never implicated himself. The defense strategy was obviously to use Wallace to further discount Collins as a witness by pointing to Collins' inconsistency in describing the shooting. Petitioner now argues this was a deficient strategy because Wallace confirmed that Collins identified Petitioner as the shooter. Petitioner misses the point. It was already well-established that Collins placed the blame for the shooting on Petitioner. It is not surprising that he did so with Wallace as well. While that portion of his testimony might have provided some benefit to the prosecution, the argument that Collins kept giving different accounts of the shooting advanced Petitioner's primary defense that Collins was not a credible witness and might be the real perpetrator. The decision to call Wallace fell well within the range of reasonably competent performance, and Petitioner has failed to demonstrate that his counsel was ineffective for doing so.

10

Because the state court reasonably rejected all of the Petitioner's claims based on the record before it, Petitioner's first claim does not provide a basis for granting habeas relief.

B. Evidence of Defense Witness's Prior Bad Act

Petitioner next asserts that the trial court erred when it allowed the prosecution to impeach proposed defense witness Gregory Berry with evidence that he had previously been convicted of murder by the same prosecutor's office. The trial court reasoned that the prior conviction was relevant to show the witness's possible bias. Berry did not testify. The Michigan Court of Appeals found that the ruling was correct as a matter of state evidentiary law. *Smith,* 2006 Mich. App. LEXIS 2303, *4-6.

Trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Petitioner has not shown that fundamental fairness demanded that he be allowed to present Berry's testimony without allowing the prosecutor an opportunity to present evidence that Barry might be biased. Accordingly, to the extent that Petitioner asserts that the trial court erred in making this evidentiary ruling, he merely alleges violations of state law which do not entitle him to federal habeas relief. *See, e.g., Wheeler v. Jones*, 59 F. App'x 23, 28 (6th Cir. 2003). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Petitioner's

11

second claim is without merit.

## C. Limitations Placed on Cross-Examination of Prosecution Witness

Petitioner's third claim asserts that his confrontation rights were violated when the trial court prevented him from cross-examining Collins' about his understanding of the benefits he received in exchange for his testimony because of attorney-client privilege.

The Supreme Court's "Confrontation Clause cases fall into two broad categories: cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination." *Delaware v. Fensterer*, 474 U.S. 15, 18 15 (1985) (per curiam). The latter category, which is implicated here, recognizes that "[c]onfrontation means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315 (1974). Thus, in cases where the trial court has restricted cross-examination in some manner, "the Court has recognized that Confrontation Clause questions will arise because such restrictions may 'effectively . . . emasculate the right of cross-examination itself.'" *Fensterer*, 474 U.S. at 19 (quoting *Smith v. Illinois*, 390 U.S. 129, 131 (1968)).

However, the Supreme Court has also explained that the Confrontation Clause does not "guarantee cross-examination that is effective in whatever way and to whatever extent the defense might wish." *Fensterer*, 474 U.S. at 20. The question is whether the trial court's ruling allowed for "substantial compliance with the purposes behind the confrontation requirement," or, put another way, whether petitioner was "significantly limited in any way in the scope or nature of his cross-examination." *California v. Green*, 399 U.S. 149, 166 (1970). Thus, "[s]o long as cross-examination elicits adequate information to allow a jury to assess a witness's credibility,

12

motives, or possible bias, the Sixth Amendment is not compromised by a limitation on cross-examination." *United States v. Cueto*, 151 F.3d 620, 638 (7th Cir. 1998); *see also, United States v. Larranaga*, 787 F.2d 489, 498 (10th Cir. 1986). Further, even if a restriction on cross-examination amounts to a violation of the confrontation right, such an error may be harmless. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684(1986).

When Collins testified at Petitioner's second trial, he had already been sentenced on the unrelated offense to a term within the federal sentencing guidelines. Defense counsel elicited from Collins that before Collins was sentenced, his attorney had advised the sentencing judge of Collins' cooperation in this case. When Collins testified that he was not advised by his attorney after sentencing that he may be brought back in for re-sentencing after he testifed in Petitioner's case, defense counsel asked: "Your lawyer never talked to you about filing a special kind of motion for you?" The prosecutor's objection to this question was sustained.

Defense counsel, however, went on to elicit from Collins that his attorney spoke to the federal judge about returning for a possible resentencing after Petitioner's trial, but there was no firm deal. Accordingly, Petitioner was not barred from cross-examining Collins relevant to the witness's specific potential bias and interest. Defense counsel's cross-examination of Collins was very thorough and she was able to obtain Collins' acknowledgment of what he may expected to receive with respect to a sentence reduction. Petitioner's counsel was also able to elicit testimony on Collins' potential benefit from the transcript of his sentencing in federal court. Further, Collins admitted that he could be resentenced after his testimony in present case, but there was no deal made. The trial court allowed cross-examination adequate to allow the jury to assess Collins' credibility, motives, or possible bias. Therefore, Petitioner's confrontation rights were not violated.

13

D.  Denial of Motion for Directed Verdict

Petitioner asserts in his fourth claim that the trial court erred in denying his motion for a directed verdict and dismissal on the charge of first-degree murder because insufficient evidence was presented to establish premeditation and deliberation.  Petitioner argues that submission of this charge to the jury may have resulted in a compromise verdict.

"[C]learly established Supreme Court law provides that a defendant has a right not to be *convicted* except upon proof of every element of a crime beyond a reasonable doubt; the Supreme Court has never held that the submission of a charge, upon which there is insufficient evidence, violates a defendant's constitutional rights where the defendant is acquitted of that charge." *Long v. Stovall*, 450 F. Supp. 2d 746, 752 (E.D. Mich. 2006)(quoting *Skrzycki v. Lafler*, 347 F. Supp.2d 448, 453 (E.D. Mich. 2004) (emphasis original); *See also Aldrich v. Bock*, 327 F. Supp. 2d 743, 761-62 (E.D. Mich. 2004.  The submission to a jury of a criminal charge constitutes harmless error where the habeas petitioner is acquitted of that charge. *Daniels v. Burke*, 83 F. 3d 760, 765, n. 4 (6th Cir. 1996); *Long*, 450 F. Supp. 2d at 752; *Aldrich*, 327 F. Supp. 2d at 761; *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001). In light of the fact that Petitioner was acquitted of first-degree murder, any error in submitting this charge to the jury was harmless.

E.  Replacement of Juror During Deliberations

Petitioner's fifth claim asserts that he is entitled to habeas relief because the trial court replaced a deliberating juror with an already excused alternate juror and ordered the jury to restart its deliberations.

14

Prior to trial one of the jurors informed the court that she would be unable to participate if the trial lasted beyond November 9, 2004, because she had surgery scheduled for the next day. The court believed that the trial would be over by then.  When deliberations were not concluded after November 9, 2004, the juror reminded the court of her surgery.  The court was able to contact an alternate juror who sat through the trial.  After questioning the alternate about whether she been exposed to any outside influences after her dismissal and finding that she had not, the court placed her back on the jury and ordered it to restart deliberations.  The court asked whether either party objected, but neither did.

This procedure did not violate any of Petitioner's constitutional rights. Under the Federal Rules of Criminal Procedure, an alternate juror may be ordered to replace a juror after deliberations have begun, so long as the court  instructs the jury to begin its deliberations anew. Fed. R. Crim. P. 24(c)(3); *United States v. Street*, 614 F.3d 228, 235 (6th Cir. 2010).  Absent a showing of bias or prejudice to the defendant, a court may excuse a juror and replace him with an alternate if, prior to deliberations, the juror is found to be "unableor "disqualified" to perform his duties. *United States v. Fajardo*, 787 F.2d 1523, 1525 (11th Cir. 1986).  The trial court ensured that Petitioner was not prejudiced by the replacement of the juror by questioning the alternate about whether she had been influenced regarding the case after the trial.  Petitioner is not entitled to habeas relief based on this claim.

## F.  Claims Raised on Post-Conviction Review

The remainder of Petitioner's claims were exhausted in the Michigan courts in Petitioner's motion for relief from judgment and the appeal that followed its denial by the trial court.  These

claims are barred from review because Petitioner failed to comply with Michigan Court Rule 6.508(D)(3), which required him to show "good cause" and "actual prejudice" for failing to have raised these claims during his direct appeal.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). Procedural default precluding a state prisoner from seeking federal habeas relief may occur if the state prisoner files an untimely appeal, if he fails to present an issue to the state appellate court at his only opportunity to do so, or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review. *See Matson v. Michigan Parole Bd.*, 175 F. Supp. 2d 925, 927 (E.D. Mich. 2001)(internal citations omitted). A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In *Murray v. Carrier*, 477 U.S. 478, 488 (1986), the Supreme Court defined cause sufficient to excuse procedural default as "some objective factor external to the defense," which precludes a habeas petitioner's ability to pursue his claim in state court.

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely

16

chance of acquittal." MICH. CT. R. 6.508(D)(3)(b)(i).

The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under Rule 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010). This court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

Here, the trial court, after discussing the provisions of Rule. 6.508(D), including subsection (3), rejected the motion for relief from judgment, ruling that Petitioner had failed to demonstrate good cause for failing to raise his claims during his direct appeal and had also failed to demonstrate that he had suffered actual prejudice. Because the trial court denied Petitioner post-conviction relief based on the procedural grounds stated in Rule 6.508(D)(3), Petitioner's post-conviction claims are clearly procedurally defaulted pursuant to that rule. *See Ivory v. Jackson*, 509 F. 3d 284, 292-93 (6th Cir. 2007); *See also Howard v. Bouchard*, 405 F. 3d 459, 477 (6th Cir. 2005).

The fact that the trial court may have rejected the claims on the merits in the alternative does not affect the imposition of a procedural bar. There is no rule waiving a procedural default in cases, as here, where the state courts look at the merits of a petitioner's claim in order to determine whether to excuse the default. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991) (concluding that the state does not waive procedural default when the state court relies on a procedural rule as an

alternative grounds for decision); *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989) (holding that procedural default is not waived by the state when a state court attempts to "enforce the procedural bar while reserving the right to excuse it"). Petitioner's remaining claims are therefore procedurally defaulted.

Petitioner claims ineffective assistance of appellate counsel as cause to excuse his procedural default. It is well-established, however, that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 463 U.S. at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id*. at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland* [*v. Washington*] claim based on [appellate] counsel's failure to raise a particular claim[on appeal], but it is difficult to demonstrate that counsel was incompetent."

*Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477

18

U.S. 527, 536 (1986)(quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F. 3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the defaulted claims. Appellate counsel filed a brief which presented what now form Petitioner's five lead issues. Though those issue are without merit, Petitioner has not shown that appellate counsel's strategy in presenting them and not raising other claims was deficient or unreasonable. Moreover, for the reasons stated by the trial court in its opinion denying Petitioner's motion for relief from judgment, none of the claims raised by Petitioner in his post-conviction motion were "dead bang winners." Because the defaulted claims are not "dead bang winners," Petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano*, 228 F. 3d 674, 682-83 (6th Cir. 2000); *Meade*, 265 F. Supp. 2d at 872.

Because Petitioner has not demonstrated any cause for his procedural default, it is unnecessary for this Court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533. Additionally, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 326-27 808 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v.*

*United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. Because Petitioner has not presented any new reliable evidence that he is innocent of this crime, a miscarriage of justice will not occur if the Court declined to review his procedurally defaulted claims on the merits.

Finally, even if Petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee*, 486 F. 3d 883, 891 (6th Cir. 2007). For the reasons stated by the trial court in its opinion denying the motion for relief from judgment, Petitioner has failed to show that his claims have any merit.

IV.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full

20

merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll.§ 2254.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed in forma pauperis on appeal, as any appeal would be frivolous. See Fed. R. App. P. 24(a).

V

Accordingly, it is ORDERED that the petition for writ of habeas corpus is DENIED.

It is further ORDERED that a certificate of appealability is DENIED.

It is further ORDERED that permission to proceed in forma pauperis on appeal is DENIED.

s/John Corbett O'Meara
United States District Judge

Date:  January 16, 2013

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, January 16, 2013, using the ECF system and/or ordinary mail.

s/William Barkholz
Case Manager